Thank you, Your Honors, and may it please the Court, Arjun Sivakumar for the appellant, Charles W. Daff, the Chapter 7 trustee for Richard J. Swintek. And I'd like to reserve five minutes for rebuttal, please. Okay, watch your clock. It counts down. Okay. Your Honors, this case relates to, began when Ms. Good, the appellee today, purchased certain judgments against Mr. Richard James Swintek and took judgment enforcement actions back in 2010, including obtaining a temporary judgment enforcement tool under California law known as an ORAP lien, which is a lien on Mr. Swintek's personal property that lasted for one year. So the lien was obtained in 2010 and expired in 2011 under state law. In the interim, don't we have a preliminary question here? Were those ORAPs actually served? In your brief on page 9, you say, assuming service was proper. So isn't that a preliminary question? Did the bankruptcy court determine that service had been properly made? As far as I know, the bankruptcy court has not yet made a determination as to that. Well, isn't that the end of the case? Is there any case of controversy then? If they haven't been served, then there's no question before the Court. Aren't there two liens here? Aren't there two ORAPs? There are. One is to Mr. Swintek and one to Mrs. Swintek. Yes. The one to Mrs. Swintek, there's some question as to whether that was properly served? Yes. But no question as to the first one? There's no question. I believe I've seen the proof of service on the ---- But did the bankruptcy court or the BAP make any finding on whether service was affected on either one of them? Excuse me. I'm not aware that any finding has been made on that. Wait a second. Hold on a second. It happens. Okay. So my question is whether or not the bankruptcy judge or the BAP actually found that these liens were, in fact, created. Yes. And my honest answer is I'm not aware that that particular issue has been communicated. Jesus. Excuse me. I apologize to the Court. Okay. So doesn't there have to be a finding that the ORAP liens were actually created through service before we can decide whether or not their effectiveness is told? Yes. In terms of the validity of the ORAP lien, yes, there would be no ORAP lien unless that ---- But as to at least one of the ORAP liens, there isn't any question that it was properly served. No question has been raised. That's right. But you say in your brief, though, with respect to the earlier one, assuming service was proper. Yes. Page 9. That's to the second one. That's the one to Mrs. Smith. No, that's the first one. The second one, you say it as to both, assuming service was proper. Yes. So there was a proof of service submitted, I believe, on the first one. I mean, there were some questions as to I believe it was dated much later than ---- What do you mean by assuming service was proper? Because even if you have a proof of service and service could still not be proper. That's right. So I believe what I was addressing is the fact that if there's potentially a dispute as to the proof of service. Well, which is it? Are they ---- As Judge Bybee suggested, maybe one there isn't, one there is. I don't ---- I didn't see a finding by any court. You're suggesting that there is a proof of service, but you're also saying twice, assuming service was proper, suggesting that there's a question as to whether or not service was proper. Did you raise this in your brief? I mean, you mentioned it. Did you raise it as an issue? So the issue of service is not on appeal. Okay. Did you raise that to the bankruptcy court, the question of service? In our summary judgment motion, I ---- Did you raise it to the BAP? I believe the argument in this ---- So the reference of the brief then turns out to be largely gratuitous, isn't it? You're not really challenging that. You're not challenging that here on appeal. So if anything, you've waived it. If there's an objection to service and service can be waived, you've waived it. But actually, it's a question of whether we have jurisdiction, whether there's a case or controversy. So we should ---- the court needs to raise it. Yeah. And that's ---- Yeah. Could we represent again? I'm sorry. Are you representing the trustee? Yes. Okay. So have you just litigated this assuming that the ORAPs exist? Yes. Ms. Goode, the appellee brought a declaratory relief action on the issue of her sort of this 108C extension, and then that's what's been litigated through the BAP and the Ninth Circuit now. Well, if ---- so the way to create a lien under the ORAP, as I understand it, is through service, right? That's correct. So if there's a question as to service, that means there's a question as to whether or not the liens exist, right? That's correct. And if the liens don't exist, why are we here deciding whether or not their enforcement is told? That would be correct. And, I mean, yeah, that issue wasn't raised in the ---- But if we have one good lien, then the appeal can go forward, right? That's correct. And the Judge Wardlaw's question is a really good one, but I'm not sure that we've sort of got a straight answer yet. If the second lien, which may or may not be relevant to the question as to whether we have jurisdiction today over the appeal, but if the second lien, there's a challenge to service, service ordinarily can be waived. Does that mean under California law that if there's a ---- if you haven't raised a challenge to service, that the lien is good even if it wasn't properly served? Because in other contexts, a defendant can always waive appropriate service. And you don't raise it, it's waived. Is there anything different about California's lien law or ORAP that would suggest that even if you failed to make a proper objection or preserve a proper objection to service, that the lien is still not valid? I'm not aware of anything that would suggest that. Okay. And you didn't raise it as an issue, so you weren't really interested in discussing that problem. Yeah, that's not ---- that wasn't involved in either the BATH appeal or in this appeal. Potentially, I guess it could be raised at trial. Well, why would it be raised at trial? You've waived it. Yes. I mean, I ---- I mean, you've waived it at every stage of the litigation so far. Why would you get an opportunity to raise it later on? I have to look back at our summary judgment motion, Your Honor. I'm not entirely sure if that was also included in the motion. Okay. But anyway, you decided not to pursue it for whatever reason. Yeah. It's not being pursued today. Okay. Thank you. So ---- Well, I don't know. I get hung up on the language of the statute. It says service of the order creates a lien on the personal property of the judgment debtor for a period of one year. So this is a strange sort of service because it's just the very fact of service that creates or doesn't create the lien. Yeah. I mean, that's correct. So it is a little bit different from normal. But then why did you say in your brief assuming service was proper on page 9 if it isn't being raised? So I believe that ---- And in what way wasn't service proper? Does it mean it was not served by somebody who was over the age of 18 or over the age of 21 or whatever California requires or it wasn't served in duplicate or what would be the ---- what's the defect? So my recollection is that as to the ---- we didn't see a proof of service as to the lien on Mr. Swintek's wife. And as to the lien on Mr. Swintek, there were some questions as to the proof of service was dated much later than the service itself. So there was a potential question for trial on that issue. And I'm not ---- Yeah, you did apparently dispute it below. AR-217, trustee arguing that creditor never produced proof of service against debtor. Statement of disputed facts opposing creditor's motion for summary judgment. And that dispute was not resolved by the bankruptcy judge. Should we do a limited remand and find out whether these liens were in fact created? There was also something, if I recall, and I read this case a little bit ago, but wasn't the service very close to the time that the bankruptcy itself was filed? That's correct, yeah. So was there a question on the ---- whether the service occurred before or after the bankruptcy was filed? No, I don't think that was a question. I think it was there before the bankruptcy was filed. Well, do you have something you want to say about the merits, assuming we get over this hurdle? Yes. Because you wanted to save five minutes, and you're now at 4.51. Oh, yeah. Let me just go through my main case then. So Ms. Goode suggests that basically in 2011, these liens would have expired. These liens expired under state law. Ms. Goode could have renewed the lien in state court, or if she was prevented by doing so by the automatic stay, she could have moved for relief from state and do so and did not. So then the question today before this court is whether Section 108C of the bankruptcy court, of the bankruptcy code, I'm sorry, somehow saves the liens regardless. And this, the bankruptcy court correctly found that it does not, and the bankruptcy appellate panel reversed that. The problem with Ms. Goode's argument is the text of the bankruptcy code itself. And if we look at Section 108C, it only provides for extension of periods for commencing or continuing civil action, whereas in other parts of the bankruptcy code, like Section 362A specifically, it's in 362A1, it provides for commencement or continuation of civil action to be stayed. And then separately in Section 2, it provides for enforcement of judgments to be stayed. So if we follow the bankruptcy appellate panel's ruling in this case, 362A2 would be a nullity, because if enforcement of judgments truly is simply continuation of a civil action. So moreover, it's clear from looking at Section 362 that, you know, they could have simply made it A123, same as they did in 362, and they did not do so. So that's, so those statutory interpretation points, I believe, are conclusive of this appeal on the merits. I know there's some case law raised by, that is likely to be raised by the other side. Specifically the, there's a case in Ray Hunter's run. That one is a mechanics lien case, which is very different from the ORAP lien in that the mechanics lien specifically. How do you get around the Second Circuit's case? It seems to be right on point, and which is cited in Sperdos and Hunter's run. In Ray, is that in Ray Morton? Yes. Yeah, so like the, like Sperdos and Hunter's run, like if we, I mean, if the ruling in Morton would, if accepted, would render 362A2 to be a nullity. And so it's not. Do you have a way of distinguishing Morton, or do you just simply disagree with it? I do. So, I mean, in terms of, well, Morton, in Morton the Court talks about basically two issues. It talks about whether the automatic stay somehow automatically tolls. To answer your question, I think I disagree with it. I disagree with the reasoning the Morton Court used. So if we were to agree with you, then we would not only have to deal with our prior decisions in Sperdos and Hunter's run, but we would simply have to disagree and go into conflict with Morton. That's correct. I mean, I think that, as I was saying before, in Hunter's run it deals with a mechanics lien, which literally fixes a period for commencing a foreclosure. But we cited Morton favorably in both Sperdos and Hunter's run, and for the principal issue. I realize there's two issues in Morton, but the second one we said in Sperdos just wasn't going to be an issue. Sorry, I'm not sure. We've cited Morton with approval in two cases now. And Sperdos. So Sperdos, on the other hand, deals with judgment renewal, which is, again, a separate issue from lien, specifically judgment enforcement tools, because judgment renewal is literally, again, a continuation of the civil action. Without renewing the judgment, you would lose all rights. In the civil action, you have no claim at all. But in the case of the ORAP, it's a temporary judgment enforcement tool under state law. Ms. Goode doesn't lose her right under the judgment. She still has a right to pursue the judgment. She just can't get the debtor to testify about where the assets might be. Yeah, and she would. So there would be a difference in priority in the bankruptcy case, but that's not. What's the difference in priority? The judgment would be given higher priority, right? Excuse me? The judgment would be given higher priority. So if there's a ‑‑ if Ms. Goode has a valid reason to obtain higher priority, she would. If the ORAP lien is expired, then there's no priority unless she has it in a different ‑‑ through a different context. But that's sort of like ‑‑ that's the reason why I guess she would have had to renew the lien under state law. Or file for relief from state to renew the lien under state law in order to retain that priority. But the debtor either way doesn't obtain any advantage, which I think is sort of the Morton courts. Where the Morton court was going is that the debtor, there's somehow inequity created unless we stretch the language of 108C to encompass these liens because the debtor could take advantage of the process by filing for bankruptcy during that period when it runs and then basically delaying proceedings in the bankruptcy until the period runs. But that's not ‑‑ I don't believe that's the case because first of all, this is a Chapter 7 case, so like it's going to be ‑‑ the money is going to be split between the creditors before and they'll all be paid in full before the debtor receives anything back. So no matter what, there's not going to be any sort of ‑‑ like Mr. Swintek doesn't gain anything by filing for bankruptcy during that period. And moreover, Ms. Goode was free to either, again, renew the lien under state law or if she felt that she was saved from doing so under 362 to move the bankruptcy court for relief from stay. And I think that would be a much more, if the Ninth Circuit could provide that sort of guidance in the state on this issue of first impression, I think that would provide much greater control over the bankruptcy proceedings for bankruptcy courts to be able to sort of know what's going on and be able to determine this issue. All right. Thank you, counsel. Thank you. Good morning, Your Honors. Michael Wallin for Appellee Karen M. Goode. First, to quickly address the service issue, the judgment debtor was served with the ORAP, thereby creating the ORAP lien on June 30th, 2010, and the judgment debtor's spouse was served with the ORAP, creating the ORAP lien on September 2nd, 2010, both prior to the petition date. To the best of my recollection, considering my review leading up to today, I don't think that that service of the ORAPs was really at issue before Judge Albert at the bankruptcy court level. I think that the trustee, the appellant here, filed a summary judgment motion on the 108C issue. Judge Albert eventually agreed with the trustee. Summary judgment was granted in the trustee's favor in that end of the matter, to the best of my recollection. I'm sorry, but here's what the BAP says. Trustee disputes and Goode contends she held a valid ORAP lien against Swintik at the time he filed his bankruptcy case. This contention may involve a factual matter the bankruptcy court will have to determine on remand. If valid, X. To me, that sounds like an advisory opinion. I understand, Your Honor. It was remanded back to Judge Albert. This case has been going on for a very, very long time. If it is to be remanded for a decision on that issue at the bankruptcy court level, it may come to that. I believe to the extent any service issue existed at any point, it has been waived. I mean, the fact that we're even here today. You know our standards of jurisdiction. Understood, Your Honor. So let me ask. I mean, I don't know why the BAP wrote this, but that's what they said. Help me understand what rights Ms. Goode has. She still has the judgment, right? Yes. She has a valid underlying judgment that's enforceable against this debtor. Or was it done away with through the bankruptcy filing? The debtor, in this case, obtained a discharge. So the debtor's underlying personal liability to Ms. Goode, the judgment creditor, has been extinguished. However, Ms. Goode's judgment lien, her lien against the debtor's assets, has not been extinguished. Okay, now I'm not talking about her ORA lien. So she had a judgment, and that was her judgment that she had against the debtor was discharged in the underlying bankruptcy. Correct. There was no adversarial proceeding filed, no assertion of non-dischargeability. So just like credit card debt, medical bills, other unsecured debt, the debtor discharged underlying personal liability but cannot eliminate liens, which is why this is so critical. Which is why you're holding on to this ORA lien. Well, suppose the ORA lien is told. What rights does she have? She currently has a lien against all the money that the trustee is currently holding, and she will receive all that money. And if she was, if the night shift was decided. Is that what the lien, is that what an ORA lien does? Well, in this case, two things happened, Your Honor. First, she obtained her ORA lien. Second, she used her judgment and her writ of execution on the judgment to actually So this, she levied on the account, and after that levy, the debtor filed bankruptcy, and then the money got rerouted to the Chapter 7 trustee, Mr. Daff, the appellant, as opposed to my client. So if the ORA lien, if 108C is deemed to toll the expiration of the ORA lien, which it should, and which the bankruptcy appellant panel found, then the end result, after many years, is going to be this money is finally going to go to Ms. Goode. And one thing to point out that I thought was interesting in reviewing the transcript of the bankruptcy court hearing before Judge Albert is, well, let me step back. In the Hildy case, which was cited by the bankruptcy appellate panel, the Hildy court said that to the extent that the court or any trustee or anyone has public policy issues with ORAP liens generally, that that's something for the legislature to solve. It's not for anyone else to solve. But when you read the transcript of the bankruptcy court hearing before Judge Albert, he makes clear that he doesn't like ORAP liens. I mean, he says, quote, is there anything within the spirit or letter of Section 108 that ought to preserve it, bearing in mind that I don't like them to begin with and I don't think it's commencement of an action? And he also says, quote, and so the question really becomes, what do I think is the better rule with respect to dealing with ORAP liens, and I think the better rule is the one I've articulated, and the reason I say that is because I think ORAP liens are problematic anyway. He doesn't like ORAP liens, which is his right, but it's not. Well, there's a lot of problems with ORAP liens. They don't have to be perfected. They're secret. They're not in the spirit of the bankruptcy code. I understand. I would not call those problems. But I'm saying from his perspective, that's what he found were problematic with those type of liens. They're not a public record. Correct, but he's not entitled to interpret 108C differently because of the fact he doesn't like ORAP liens. ORAP liens are what they are. Right, but they're different from judgment liens, right? Of course, but the whole bankruptcy scheme, when you combine Bankruptcy Code Section 362 regarding the automatic stay and then Section 108C for tolling, it's supposed to serve two dual purposes. One is a stay is supposed to go into effect so that creditors are not able to take any action so that the trustee can do his or her work and the debtor can get a breathing spell. On the other hand, 108C is designed to essentially maintain the pre-bankruptcy status quo and to leave creditors no worse off because of the fact that they've been stayed. In the appellant's brief, he goes to great lengths, and it's a very well-written brief, but he goes to great lengths to talk about 362A1 versus 362A2 and the fact that A1 references the continuation or commencement of an action, whereas A2 references the enforcement of judgment. But 362A contains subsections 1 through 8, and they're not mutually exclusive. The purpose of 362A, in my mind, is to be as broad as possible and to impose a very wide, broad automatic stay. And so something can be stayed pursuant to more than just one of those subsections, which is the case here. And when the Spiritos case was decided by the Ninth Circuit, 362A existed in the exact same form that it exists today, and that was no part of the court's analysis. And the other logical flaw I think that the appellant has in trying to hang his hat on this 362A1 verse 2 distinction is that the trustee seems to want to create two separate artificial categories that shouldn't be created. On the one hand, the commencement or continuation of civil actions. On the other hand, anything judgment enforcement related. And have 108C apply to the first category but not apply to the second category. But that flies in the face of the Spiritos decision. It flies in the face of the Morton's decision, and it doesn't make logical sense to do so. I mean, in the Bankruptcy Appellate Panel, in explaining its reasoning for its decision, says, quote, it is the inability to enforce the judgment for a portion of the 10-year period that keeps the duration open under Section 108C. So the logic that the Spiritos court used was that because the creditor was prevented from taking action by the automatic stay during the bankruptcy case, there should be a tolling under 108C. And the same logic applies here. So what prevented Ms. Goode from extending the lien? The automatic stay of 362A. So she was stayed under 362A1, under 362A2. But extending the lien isn't listed in 362. I believe that if she was to, without seeking relief from the automatic stay from the bankruptcy court, had she filed a notice motion in state court seeking to extend the ORAP lien, that would have very likely been a violation of the automatic stay. Why didn't she ask permission? Excuse me, Your Honor. Why didn't she ask permission of the bankruptcy court? Because it's not required because it's a tolling under 108C. If you think about how it would work logically, if the decision was to be other than what the Bankruptcy Appellate Panel ruled, it would create a very strange situation in which ORAP liens are not tolled during bankruptcy, so the debtor and the trustee can kind of control when to file to cause liens to expire. Then it would cause every judgment creditor with an ORAP lien to first file a motion for relief from the automatic stay, asking the bankruptcy judge for permission to go back to state court. Then the judgment creditor with the ORAP lien would file a motion in state court seeking to extend it. And then I guess either the debtor would oppose that motion in state court or the bankruptcy trustee would come into state court and oppose the motion. There's no reason to put that obligation on a judgment creditor when that obligation is not put on any other creditor with a lien or any other creditor, period, because, again, this balancing between the automatic stay of 362 versus the maintaining status quo purpose of 108C, it's, one, unfair and inequitable to the judgment creditor with a lien, and, two, it just would wreak havoc, it seems, on the entire bankruptcy process. Another point that's raised that I think that the Bankruptcy Appellate Panel properly rejected is this concept that because of the fact that judgment enforcement steps, such as this one, are taken after the entry of the judgment, that it can't be or is not the continuation of a civil action and, therefore, not included within 108C. I think that the Spiritos case and others and the panel correctly understood that, yes, it is continuation at a minimum of a civil action. The only reason that Ms. Good was able to take any of these steps is because a judgment was existing in civil court. Every time she went to court, she went to the same judge that entered the judgment. It's a supplemental proceeding. I don't think there can be any reasonable dispute with respect to that. And I think that the appellant, I guess, in another attempt to try to distinguish, to get around the Spiritos and Morton's problem, to explain why it's okay to have a judgment creditor with a lien, like lose her lien, but at the same time allow Spiritos to remain and Morton's to remain, meaning that a creditor is allowed to renew, the renewal period is told under 108C. The appellant tries to create some artificial distinction between it's not so bad if a creditor loses her lien, but it would be really bad if the creditor lost her judgment as a whole. There's no reason to make such a distinction. In either case, the creditor is losing an interest in property, losing a right, a valuable right, merely because of the fact that the debtor filed bankruptcy and the automatic stay that comes there with. That does not seem that that's in the spirit of what the Bankruptcy Code is seeking to accomplish. With that, I have nothing further. Okay. Thank you, Counsel. Do you have a minute for rebuttal? I know that. We peppered him with questions he wasn't expecting for the first ten minutes of his time. Thank you, Your Honor. I would just say in response to the argument again, I mean, the statutory interpretation argument holds. I mean, I'm thinking even to the extent this Court considers legislative history, which it doesn't need to. Well, how do you distinguish Spiritos and Hunter's run? So Hunter's run was a mechanics lien, which is very different from the particular ORAP lien because the mechanics lien involves basically two third parties, a party that had nothing to do with the debtor filing and the mechanics lien against the property of the debtor. And then the mechanics lien statute literally fixes a period for commencing a civil action, specifically a foreclosure action under Washington law. So that's why that falls under 108C. I don't think anybody's contending, including the BAP, that this case involves commencing a civil action. The BAP claim that this involves continuing a civil action. And that, I think, in Spiritos, the reason that language applies is because that involves renewal of the judgment itself, which is literally continuing the civil action by renewing the judgment. Whereas this is like a temporary ORAP, the temporary judgment enforcement procedure, which is under state law expires after one year. What happens if this lien's created, the debtor never gives the oral testimony? Is she entitled to the full amount of the judgment? The lien would expire after one year. I mean, during the year, could she enforce it and get a hold of the funds? She would have to use, I believe, other processes to enforce it. I don't know of anything in the ORAP statute itself that provides for enforcement specifically, in the same way that Connors-Rauner foreclosure statute would. All right. Thank you, counsel. Thank you.
judges: Wardlaw, Bybee, Bartle